IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSÈ TERAN,

    Plaintiff,

v.                                                   Civ. No. 00-229 RLP/WWD

CONSOLIDATED FREIGHTWAYS
CORPORATION OF DELAWARE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on Defendant Consolidated Freightways' Motion for Summary Judgment. For all of the reasons set forth below, the Motion is granted and this case is dismissed with prejudice.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To avoid judgment, the nonmoving party must present sufficient evidence to raise a genuine issue of material fact as identified by the substantive law to warrant sending the issue to the jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986).

## FACTUAL BACKGROUND

Mr. Teran was born in Mexico and is a naturalized citizen of the United States. He has been employed as a truck driver at Consolidated Freightways ("CF") since 1984 and is a member of Local Union 492 of the International Brotherhood of Teamsters (the

"Union"). Mr. Teran alleges that he has been subjected to discrimination in the form of a hostile work environment based on his national origin and brings this action pursuant to 42 U.S.C. § 1981 and Title VII (42 U.S.C. § 2000e *et seq.*).[1]  In support of his hostile work environment claim he contends, among other things, that his supervisors subjected him to a barrage of racially[2] charged epithets.  His claims for hostile work environment and disparate treatment are predicated on the same facts.  He further alleges retaliation for filing his EEOC charge.  He also claims his supervisors defamed him and are liable for intentional infliction of emotional distress.

Mr. Teran's work situation apparently began to deteriorate when Dave Carter was made Terminal Manager at CF.  Mr. Teran and Mr. Carter had some difficulties in the past.  Mr. Teran was told by co-workers Christy Richardson and James Blankenship that Mr.

---

[1] Mr. Teran's complaint also alleged various state law claims, most of which were dismissed by this court's Memorandum Opinion and Order of November 22, 2000 [Doc. 54].  The remaining state law claims of defamation and intentional infliction of emotional distress are discussed herein.

[2] In reality, there is no Hispanic (or Latino, or Mexican) "race."  *See generally* Alex M. Saragoza *et* al., *History and Public Policy  Title VII and the Use of the Hispanic Classification*, 5 La Raza L.J. 1-27 (1992). Section 1981 provides in pertinent part that all individuals shall have the "full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ."  The Tenth Circuit Court of Appeals, in *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968 (10th Cir. 1979), held that a plaintiff of Mexican-American descent had stated a claim of national origin discrimination under § 1981:  "If 'white citizens' means a race, which technically does not seem particularly clear, it would seem that a group which is discriminated against because they are somehow different as compared to 'white citizens' is within the scope of section 1981."  *Id.* at 971.  And in a Title VII race discrimination case, one district court has noted that the "common use, or misuse, of the term [Hispanic] has blurred the line between race and national origin discrimination as it pertains to Hispanics.  Consequently, the term "Hispanic" is unique, encompassing the concepts of both race and national origin in a way that the terms 'white,' 'black,' and 'Asian' do not. *Torres v. City of Chicago*, 2000 WL 549588, *1 (N.D. Ill. 2000) (unpublished opinion).

Carter had called him a "fucking Mexican" and "goddamned Mexican" behind his back. He was also told that Mr. Carter had said to Ms. Richardson that he didn't want Mr. Teran "gone," he wished he would "just die." Mr. Teran was also told by co-workers that Mr. Carter had referred to him as the "slowest worker" and the "last guy out on the dock every day," evidently meaning he was slow starting out on his delivery routes. Mr. Teran also complains of being denied overtime work, of receiving written disciplinary warnings, and of being given more difficult loads than his co-workers. By Mr. Teran's account, the foregoing incidents occurred over a three-year period.

DISCUSSION

1.   Hostile Work Environment

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."   42 U.S.C. § 2000e-2(a)(1).   The United States Supreme Court has held that

> [t]he phrase "terms, conditions, or privileges of employment" evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. . . .   When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe to pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted).

3

The Court held that to determine whether an environment is "hostile" or "abusive" requires looking at all the surrounding circumstances.

> These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Id.* at 23.

As defined in this circuit, "[t]o constitute actionable harassment, the conduct must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Bolden v. PRC INC.*, 43 F.3d 545, 550-551 (10th Cir. 1994) (brackets by the court; internal quotation marks omitted; citation omitted), *cert. denied*, 516 U.S. 826 (1995). Thus, to survive summary judgment, the plaintiff's "facts must support the inference of a racially hostile environment." *Id.* at 551. Specifically,

> it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, . . . and (2) the harassment was racial or stemmed from racial animus. . . The plaintiff must show more than a few isolated incidents or racial enmity. . . . Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.

*Id.* (internal quotation marks omitted; citations omitted).

A review of the record submitted does not support Mr. Teran's claim of hostile work environment. Rather than being subjected to a barrage of epithets and disciplinary procedures, Mr. Teran only notes two racial slurs which were second-hand by two

4

employees, and the last comment was made two years ago. One co-worker indicated that type of language was frequent among the employees. Similarly, another co-worker had heard Mr. Carter say he wished another employee would die.

Concerning the work-related matters, Mr. Teran admitted that he was written up for breaking company policies and the letters were justified. He also said that when overtime work was given to a junior employee, he had filed grievances with the union and he was compensated. He was somewhat vague about the difficulty of his loads and routes, but he presented no facts indicating that his loads and routes were any more difficult or onerous than anyone else's. He testified that he has suffered no loss in pay or benefits. From one exhibit submitted, it appears that favoritism was a problem on the shipping and loading dock but that letter does not indicate Mr. Teran was being singled out or treated differently from his fellow union members.

When all of the foregoing is considered together, and including Mr. Teran's allegations that he suffers from various complaints (the "shakes," headaches, insomnia and "being sick"), the court finds that the totality of the circumstances does not establish an inference of a hostile work environment necessary to survive summary judgment. Although the remarks were offensive, the sum total does not meet the requirements set forth in *Bolden*.

2. Disparate Treatment

To prevail on a claim of disparate treatment under Title VII, a plaintiff must establish a *prima facie* case of discrimination. Mr. Teran therefore must show that he is a member of a protected class; that he suffered an adverse employment action; and that the action

5

was racially motivated. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). For the same reasons that Mr. Teran's hostile work environment claim fails, his disparate treatment claim also fails. That is, he has failed to show an adverse employment action and he has failed to show racial (or national origin) animus.

3.      Retaliation

In support of his claim of retaliation, Mr. Teran states that he was "intimidated and harassed" when he wanted to take off time to have his deposition taken. From the record testimony submitted by the parties, CF's conduct does not rise to the level of an adverse employment action which is necessary for a retaliation claim, which requires (in addition to the protected activity and temporal proximity) an adverse employment action. *McCue v. Kansas Dept. of Human Resources*, 165 F.3d 784, 789 (10th Cir. 1999). From the record, it appears that Mr. Teran was only asked whether he was taking more time off; this is not an adverse employment action, nor does it constitute harassment.

4.      State Law Claims

Finally, two of Mr. Teran's state law claims remain, defamation and intentional infliction of emotional distress. His defamation claim rests on the statements made by Mr. Carter that at Mr. Teran was the "slowest worker" on the dock and that Mr. Teran was a "sorry employee." Both of these statements constitute opinions and not fact and are therefore not actionable. *Moore v. Sun Publishing Corp.*, 881 P.2d 735 (N.M. Ct. App.), *cert. denied*, 882 P.2d 21 (1994).

To the extent Mr. Teran's claim for intentional infliction of emotional distress is asserted, that claim also fails. In New Mexico, liability is only found for intentional

infliction of emotional distress when the conduct at issue is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Pawda v. Hadley*, 981 P.2d 1234, 1237 (N.M. Ct. App.) (quoting *Restatement (Second) of Torts* § 46 cmt. d), *cert. denied*, 981 P.2d 1207 (1999). Mr. Teran's allegations do not rise to this level. Accordingly, summary judgment in favor of Defendant and against Plaintiff will be entered.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion For Summary Judgment [Doc. 51] is granted and this case is dismissed with prejudice.

IT IS SO ORDERED.

                                      Richard L. Puglisi
                              United States Magistrate Judge
                                  (sitting by designation)